## In re Doris Laverne JACKSON f/k/a Rogers, Debtor.

### Doris Laverne JACKSON f/k/a Rogers, Plaintiff,

v.

### SECURITY FEDERAL SAVINGS AND LOAN ASSOCIATION and L.R. "Bob" La Roche, Defendants.

Bankruptcy No. 286–20600.

Adv. No. 287–2022.

United States Bankruptcy Court,
N.D. Texas,
Amarillo Division.

Aug. 13, 1987.[*]

Edward P. Oubre, Amarillo, Tex., for plaintiff.

Norman Gutzmer, Miller & Herring, Amarillo, Tex., for La Roche.

Tracey L. Noblitt, Gibson, Ochsner & Adkins, Amarillo, Tex., for Security Federal.

Tim Truman, Fort Worth, Tex., Trustee.

### MEMORANDUM OF OPINION

JOHN C. AKARD, Bankruptcy Judge.

Doris Laverne Jackson (Debtor) seeks to set aside the foreclosure sale of her homestead as a fraudulent transfer under § 548(a)(2) of the Bankruptcy Code.[1]

---

**\*** This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052.

**1.** The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to Section numbers are to Sections in the Bankruptcy Code.

598

## Facts

Security Federal Savings & Loan Association (Security Federal) held a valid perfected lien on the Debtor's home at 2108 Seminole, Amarillo, Texas. As a result of a default in the payments on the note secured by said lien,[2] Security Federal caused the property to be sold at Substitute Trustee's Sale on November 4, 1986. The property was sold to L.R. La Roche (La Roche) for the sum of $14,000.00. The property was conveyed to him by Substitute Trustee's Deed dated November 4, 1986 and recorded in the Deed Records of Potter County, Texas on November 10, 1986. The parties stipulated that the foreclosure sale was in proper form and that the price bid at the sale fully satisfied the note held by Security Federal.

The Debtor filed for relief under Chapter 13 of the Bankruptcy Code on December 5, 1986, claiming the house at 2108 Seminole as her homestead. Her Schedules listed total assets of $45,379.31 including this property valued at $32,500.00 and 48 months of delinquent child support due from her former husband in the amount of $7,200.00. The Court doubts the collectibility of the delinquent child support and when that, together with this property, is deducted, she had $5,679.31 in assets. Her scheduled secured liabilities were $49,-140.13 including a disputed liability to La Roche of $32,500.00 and $12,919.05 to Security Federal, leaving her other secured debts at approximately $3,700.00. Unsecured claims debts were approximately $4,000.00.

The Debtor introduced without objection two appraisals of this property by William P. Kerr, a real estate broker of Amarillo, Texas. One of them, based on three comparable sales, indicated the market value of

this property to be $32,000.00 on February 23, 1987. The other statement by Mr. Kerr, based on three other properties which he considered comparable, found the market value of this property to be $30,-000.00 on February 23, 1987. The relevant time is the date of foreclosure, November 4, 1986, but these appraisals are sufficiently close in time to give an indication of the value of the property on that date. There was no indication that the value of the property had drastically changed between November 4, 1986 and February 23, 1987. Testimony at the hearing indicated that La Roche valued the property at $32,000.00 a few days after the foreclosure sale.

## Statute

In pertinent part, § 548 reads as follows:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

. . . .

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation. . . .[3]

A transfer is defined in § 101(50) as follows: " 'transfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and *foreclosure of the debtor's equity of redemption....*" (Emphasis added.)

---

2. Pleadings by Security Federal indicate that the default was $982.95 at the time of the foreclosure.

3. The parties concede that the Debtor in a Chapter 13 proceeding may exercise the avoiding powers of a Trustee. *Willis v. Borg-Warner Acceptance Corp. (In re Willis),* 48 B.R. 295 (D.C.S. D.Texas 1985).

If the Court sets aside a transfer under § 548, then § 550 provides:

> (a) ... [T]he trustee may recover, for the benefit of the estate, the property transferred, or if the court so orders, the value of such property, from—
>
> > (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made....

### Discussion

The facts of this case are almost a copy of those in *Durrett v. Washington National Insurance Co.*, 621 F.2d 201 (5th Cir. 1980).[4] *See also Abramson v. Lakewood Bank & Trust Co.*, 647 F.2d 547 (5th Cir. 1981), *cert. denied*, 454 U.S. 1164, 102 S.Ct. 1038, 71 L.Ed.2d 320 (1982) and *Willis, supra* n. 3.

In the case at Bar the transfer (foreclosure)[5] occurred approximately one month prior to the filing of the Chapter 13 petition. The Debtor received less than reasonably equivalent value in exchange for the transfer. The lowest appraisal submitted indicated a value of $30,000.00 while the bid at the foreclosure sale was $14,-000.00, or approximately 47% of the fair market value. The Schedules filed by the Debtor clearly indicate that she was made insolvent as a result of this foreclosure.

In argument, La Roche's counsel noted that purchasing property at a foreclosure sale entails certain risks.[6] La Roche argued that whatever price was bid at the foreclosure sale should be considered as the fair market value because of these risks. In *Durrett*, the Fifth Circuit suggested that a sale could not be set aside if the price bid at the foreclosure sale was more than 70% of the fair market value.

Undoubtedly, this 30% "cushion" was used to give the purchaser at foreclosure some discount for the risks of making a purchase at such a sale in addition to eliminating minor differences of opinion as to fair market value.[7]

Security Federal argued that the Debtor's action is against the transferee at the foreclosure sale (La Roche) and not against the transferor (Security Federal). This argument overlooks the clear language of § 550 which provides that the Trustee may recover the property or the value thereof from "the entity for ·whose benefit such transfer was made." Clearly the transfer was for the benefit of Security Federal since it caused the foreclosure sale and received the funds generated as a result of that sale.[8]

Security Federal asserts that the statement in *Durrett* that the purchaser at the foreclosure sale and the Debtor "are the only parties now interested in the case," means that Security Federal can retain the funds which it received at the foreclosure sale and that the Debtor's arguments are solely with the purchaser at the sale. 621 F.2d at 203. This Court does not so construe *Durrett*. That language simply states that those are the only parties who actively participated in the case before the Fifth Circuit. To allow a lender to escape all liability when a third party purchases at a foreclosure sale would be to shift the liability from a knowledgeable lender to a perhaps unsuspecting purchaser at a foreclosure sale and could lead to the use of "straw man" purchasers. Security Federal caused the foreclosure sale and benefited from it; it cannot receive the benefits of that sale without its liabilities.

---

4. The decision in *Durrett* was confirmed by the 1984 Amendments to the Bankruptcy Code and, in particular, by the inclusion of the foreclosure of the Debtor's equity of redemption in the definition of a transfer.

5. Under Texas law, there is no right of redemption following a foreclosure under a Deed of Trust. Thus, the "debtor's equity of redemption" was foreclosed on November 4, 1986.

6. Certainly one of those risks is the possibility of having the sale set aside under § 548.

7. It is not necessary to review the various methods of calculating the percentage described in *Willis supra* at 300–301.

8. The Court finds the value of the property on the date of foreclosure to be $32,000.00. If Security Federal would prefer to pay that value to the Debtor rather than accepting the solution which the Court suggests, then the Court will consider the matter.

*Conclusion*

The foreclosure sale of November 4, 1986 is void. Security Federal shall reinstate the Debtor's loan with the same monthly payments and terms and provisions as existed prior to the foreclosure, with delinquent payments to be cured through the Chapter 13 Plan pursuant to § 1332(b)(3). *Marshall v. Spindale Savings and Loan Assn. (In re Marshall)*, 15 B.R. 738 (Bankr. W.D.N.C.1981).

The Court does not have sufficient evidence before it to determine rights as between Security Federal and La Roche. Security Federal will be required to reimburse La Roche sums which it received for its benefit (including principal, interest, costs and attorney's fees), but these and any other matters which cannot be settled between the parties must await the filing of a Proof of Claim or appropriate pleadings.

Order accordingly.