**In re David F. CORBETT and Mary Lou Corbett, Debtors.**

**Bankruptcy No. 87–01359S.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Nov. 10, 1987.

Carol D. Muldrow Simmons, Philadelphia, Pa., for debtors.

Robert K. Duffy, Hatboro, Pa., for Willow Grove Federal Savings & Loan Assn.

John P. Dohanich, Monaca, Pa., for NCNB Nat. Bank.

Robert Mather, pro se.

Edward Sparkman, Philadelphia, Pa., Standing Chapter 13 Trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION AND PROCEDURIAL HISTORY

The matter before the Court, the Debtors' Motion to Avoid Transfer of Real Property Under 11 U.S.C. Section 548(a)(2)(A) and (B)(i), causes us to revisit several of the issues addressed in *In re Butler,* 75 B.R. 528 (Bankr.E.D.Pa.1987). Believing that the Debtors, though in somewhat less than graceful fashion, made out the prerequisites to avoid a sheriff's sale of their home on the basis of the Code provisions invoked, we shall grant the Debtors' Motion and set aside the sale. Lacking sufficient evidence on the record to do so, we shall refrain from determining the extent of the liens against the premises by either of the pre-sale mortgagees or the purchaser at the sale pursuant to 11 U.S.C. § 548(c), and shall relegate this determination to the claims procedure.

The instant Motion had significant procedural forebears. The Debtors' Chapter 13 bankruptcy case was commenced on March 20, 1987, subsequent to a sheriff's sale of their home located at 302 Gilpin Road, Willow Grove, Montgomery County, Pennsylvania 19090 (hereinafter referred to as "the Premises"), in execution upon a foreclosure judgment obtained against the Debtors by their first mortgagee, WILLOW GROVE FEDERAL SAVINGS AND LOAN ASSOCIATION (hereinafter referred to as "Willow Grove"), on February 18, 1987. At the time of the sale, the property was also subject to a second mortgage held by FREEDLANDER, INC., THE MORTGAGE PEOPLE, which company has been succeeded in interest by NCNB NATIONAL BANK (hereinafter referred to as "NCNB"). The property was purchased at the sale by an independent party, one Robert Mather (hereinafter referred to as "Mather"), for a sum of $65,100.00, which was in excess of all claims by both mortgagees.

On April 23, 1987, Willow Grove filed a Motion seeking relief from the automatic stay, which was preventing the sheriff's deed from passing to Mather and the payment of the sale proceeds to it. NCNB followed with a similar Motion on June 16, 1987. Although the Debtors answered Willow Grove's Motion, they failed to appear at the hearing scheduled on June 25, 1987, and, given our knowledge that the merits of the Debtors' position that they could cure a pre-sale delinquency in a Chapter 13 Plan had been rejected by this Court in *In re Rouse,* 48 B.R. 236 (Bankr.E.D.Pa.1985), we granted Willow Grove's Motion.

On July 7, 1987, the Debtors filed a Motion asking us to reconsider our Order of June 25, 1987, alleging that, on that date, both the Debtors and their counsel were present, but somehow believed that the hearing would be conducted in Room 11425 of the Court House, where creditors' meetings pursuant to 11 U.S.C. § 341 are conducted. A hearing on the Motion for reconsideration and the NCNB relief-from-stay Motion were both listed before us on September 2, 1987.

After hearing oral argument, we denied the Debtors' Motion for Reconsideration and granted NCNB's Motion. As our Or-

der of September 2, 1987, denying the Debtors' Motion, indicates, we were influenced by the tardy filing of the Debtors' Motion, *see In re Campfire Shop, Inc.,* 71 B.R. 521, 523–24 (Bankr.E.D.Pa.1987), and the fact that the *Rouse* result was reinforced by decisions rendered subsequent to our Order of June 25, 1987, *In re Roach,* 824 F.2d 1370 (3d Cir.1987); and *In re Brown,* 75 B.R. 1009 (Bankr.E.D.Pa.1987).

At the close of the September 2, 1987, hearing, we indicated that our ruling did not preclude the Debtors from seeking relief from the sheriff's sale on the basis of 11 U.S.C. § 548(a)(2). This comment apparently prompted the filing of the instant Motion on September 14, 1987.

The instant Motion came before us for a hearing on October 14, 1987. At the close of the hearing, we accorded the Debtors until October 23, 1987, to file a supporting Brief, and the Respondents, Willow Grove and NCNB, until October 30, 1987, to file an opposing Brief. Mather failed to appear at the hearing, despite certification of service of the Motion upon him by the Debtors' counsel, and did not submit a Brief.

Although this matter was presented in the form of a motion, it clearly should have been presented in the form of an Adversary proceeding, pursuant to Bankruptcy Rule (hereinafter referred to as "B.Rule") 7001(1). Hence, although we technically perhaps need not do so, *see Campfire Shop, supra,* at 524–25, we have decided to present our Opinion in the form of Findings of Fact, Conclusions of Law, and a Discussion, per B.Rule 7052 and Federal Rule of Civil Procedure (hereinafter referred to as F.R.Civ.P.) 52(a).

## B. FINDINGS OF FACT

1. The Debtors are husband and wife, who have resided together with their children, Kimerly (19) and David (15), in the

Premises since they purchased it in 1976 at the cost of $38,000.00.

2. The Husband–Debtor is a carpenter by trade, and has made several improvements himself to the Premises.

3. In April, 1986, the Husband–Debtor was injured in an automobile accident, which resulted in extended unemployment and delinquencies in the family's mortgage payments and electric bills.

4. As of the date of the hearing, the Husband–Debtor had recovered and returned to work, and the Wife–Debtor was also working full-time.

5. The Debtors testified that the present value of the Premises was between $110,000.00 and $115,000.00, and the property had appreciated by no more than $5,000.00 since the date of the sheriff's sale. These estimates were based upon periodic review of newspaper real estate advertisements; the sale of a smaller neighbor's home for $90,000.00 in September, 1987; and a "market analysis" performed for them by certain realtors, objections to the identity and precise findings of which were sustained.

6. No other evidence as to value was presented by any party. Willow Grove's counsel conceded that the value of the Premises was at least $94,000.00.

7. Considering only competent evidence, and the inferences to be drawn from the mortgagees' lack of presentation of any evidence on this point, we find that the fair market value of the Premises, as of February 18, 1987, was no less than $105,000.00.

8. The only assets of the Debtors, after the sale of the Premises, were as follows:

a. Proceeds of $1,246.27 from the sheriff's sale.[1]

b. Two motor vehicles, valued at $4,000.00 and $100.00, respectively.[2]

---

1. Although the figure was not established at the hearing, we note that both the Debtors and Willow Grove have submitted consistent copies of a Schedule of Proposed Distribution from the sale which recites this figure.

2. We refuse to consider the Statement in the Debtors' Brief, not supported by either of the Debtors' testimony, that the more valuable vehicle was purchased after the filing of the Petition and is subject to a $2,000.00 promissory note.

c. Household furnishings collectively valued at $6,000.00, but of which the only particular items exceeded $200.00 were a refrigerator worth $250.00 and a waterbed worth about $300.00.

9. The only debt of the Debtors remaining after the sheriff's sale was a bill to the Philadelphia Electric Co. (hereinafter referred to as "PECO") in an amount of at least $1,000.00.[3]

10. The Premises was sold to Mather, a party apparently unrelated to either mortgagee, for $65,100.00 at the sheriff's sale.

## C. CONCLUSIONS OF LAW

1. The Debtors realized approximately sixty-two (62%) percent of the fair market value of the premises at the February 18, 1987, sheriff's sale, which is less than the "reasonably equivalent value" of their interest in the premises. See 11 U.S.C. § 548(a)(2)(A).

2. Considering that *each* of the Debtors is entitled to exemptions of $1,200.00 in a motor vehicle, 11 U.S.C. § 522(d)(2); $4,000.00 in aggregate value of household goods, 11 U.S.C. § 522(d)(3); and $4,150.00 in "any property ... plus ... any unused amount of exemption provided under paragraph (1) of this subsection," 11 U.S.C. § 522(d)(5), the Debtors clearly had no nonexemptable property; did not have assets greater than their debts; and hence became insolvent as a result of the sheriff's sale. See 11 U.S.C. §§ 101(31), 548(a)(2)(B)(i).

3. The Respondents waived any objections arising from the Debtors' failure to properly maintain this action as an Adversary proceeding or to join any indispensable parties by failing to raise these issues prior to their post-trial Briefs.

4. All of the other requirements necessary to satisfy the conditions of 11 U.S.C. §§ 548(a)(2)(A), 548(a)(2)(B)(i), 522(h), and 522(g)(1) are met, thus permitting the Debt-

ors to avoid the transfer effected by the sale of their home.

## D. DISCUSSION

The instant case presents us with Debtors who, in a proceeding marked with questionable advocacy on all sides, and particularly on their behalf, nevertheless stumbled to victory. As we indicated at the close of the hearing, the Debtors, the only witnesses, were so poorly prepared as to the elements that they were obliged to prove, particularly as to the issue of insolvency, that they consistently provided responses which worked to their detriment. Fortunately for the Debtors, they received some unintended assistance from their adversaries, and their lack of preparation rendered them, in our view, totally candid and eminently believable.

The underlying statutory rationale for allowing insolvent debtors to overturn a sheriff's sale where a price considerably less than the fair market value of the premises is realized is set forth at some length in our previous decision in *Butler, supra,* 75 B.R. at 530–31, and will not be reiterated here. We totally reject, as we did there, those cases which refuse to allow invocation of 11 U.S.C. § 548(a)(2) in such circumstances on the grounds that the price received at a public sale is presumably the reasonable equivalent value of a premises. *See, e.g., In re Bundles,* 61 B.R. 929, 934–35 (Bankr.S.D.Ind.1986); *In re Verna,* 58 B.R. 246, 251 (Bankr.C.D.Cal. 1986); and *In re Upham,* 48 B.R. 695, 697 (Bankr.W.D.N.Y.1985). Rather, we will focus strictly on the arguments presented by the Respondents as to why the reasoning of *Butler* should not be applied to provide relief to the Debtors here, namely:

1. The Debtors failed to present sufficient evidence of the fair market value of the premises.

2. The Debtors failed to establish that they were insolvent at the time of, or were rendered insolvent as a result of, the transfer.

---

**3.** We note that the Debtors' Chapter 13 Statement lists this debt at $3,968.96. We cannot, however, consider any of the contents of this Statement because it was not admitted into the record. *See In re Aughenbaugh,* 125 F.2d 887 (3d Cir.1942); *In re Chandler,* 77 B.R. 513, 520 (Bankr.E.D.Pa.1987); and *Butler, supra,* 75 B.R. at 530 n. 1.

3. The Debtors improperly failed to maintain this action as an Adversary proceeding and failed to join Mather, purportedly an indispensable party.

The third, procedural argument can be readily dealt with first. The issue of when certain defenses must be raised or deemed waived is addressed by F.R.Civ.P. 12(h), incorporated into bankruptcy practice by B. Rule 7012(b). That Rule provides that the defense of "the failure to join an indispensable party under Rule 19 ... may be made in any pleading ... or at the trial on the merits." F.R.Civ.P. 12(h)(2). This treatment may be contrasted with that of the defense that the court lacks subject matter jurisdiction, which is never waived at any time, F.R.Civ.P. 12(h)(3), and that of service and venue defects, which are waived if not raised in pre-trial pleadings. F.R.Civ.P. 12(h)(1).

We believe that it is implicit in the recitations of Rule 12(h) as to when certain defenses are waived that procedural defenses, such as whether a matter takes the form of an adversarial proceeding or a contested motion, per B.Rule 9014, are waived if not asserted in writing prior to the hearing. Thus, in *In re Jablonski*, 70 B.R. 381, 385 (Bankr.E.D.Pa.1987), we held that the failure of a respondent to raise the issue of whether a challenge of the validity of a secured claim pursuant to 11 U.S.C. § 506(a) should be brought as an Adversary proceeding pursuant to B.Rule 7001(2) waived this issue. We reach the same result here.

Willow Grove raises the issue of the indispensability of Mather as a party for the first time in its post-trial Brief. Clearly, such a presentment of this issue is too late, per F.R.Civ.P. 12(h)(2). We should note that the Debtors certified that they served Mather with a copy of the Motion, and he failed to answer, appear at trial, or communicate with the Court at any time concerning this matter. Hence, he was effectively treated as a Respondent, and has apparently chosen not to defend his interests. Under these circumstances, we cannot be overly concerned that he was not named specifically as a defendant in an adversarial proceeding, as would have been technically proper.

Of more substance is the Respondents' claim that the Debtors' presented insufficient evidence of the fair market value of the Premises. They called only two witnesses: themselves. Both indicated some dependence on a "market analysis," which their counsel should have clearly foreseen would be excluded on the basis of hearsay.

However, as we held in *In re Blakey*, 76 B.R. 465, 469 (Bankr.E.D.Pa.1987), where we collected numerous pertinent cases, "[t]here appears to be no question that the Debtor's testimony [of the fair market value .of her home] is competent and entitled to at least some weight." This Court has repeatedly based valuation determinations solely on the basis of the testimony of owners. *See In re Powell, Powell v. Lennon*, Bankr. No. 86–04247S, Adv. No. 87–0371S (Bankr.E.D.Pa. July 9, 1987); and *In re Cooper*, 22 B.R. 718, 719 (Bankr.E.D.Pa. 1982).

.The testimony of the Husband–Debtor was based, in substantial part, upon periodic reviews of neighboring real estate sales in connection with his employment as a carpenter. Personal knowledge of a recent sale in the same block was indicated. The Court also cannot overlook the negative inference to be drawn from the failure of the Respondents to present any evidence on this issue, despite their obvious access to expert witnesses who could have proven their claim that the Debtors' value estimates were inflated if such a contention had any merit. Finally, both Respondents' counsel did not seriously contest that the value figures recited by the Debtors were within reason.

We acknowledge that testimony of owners is subject to circumspection due to their natural bias and possible lack of expertise. *Compare Continental Bank v. Frank*, 343 Pa.Super. 477, 495 A.2d 565, 568–69 (1985). However, here, as on all relevant points, we found the Debtors totally credible and logical in their conclusion that the value of the Premises was at least $105,000.00.

Having determined the fair market value of the Premises to be $105,000.00, the $65,100.00 purchase price computes to precisely sixty-two (62%) percent of the fair market value of the Premises. This is quite comparable to the 57.3 percent of value figure which we found to be "less than equivalent value" in *Butler,* 75 B.R. at 531, and well within the benchmark of seventy (70%) percent suggested in *Durrett v. Washington National Insurance Co.,* 621 F.2d 201, 203–04 (5th Cir.1980). *Durrett* was expressly followed not only by us in *Butler,* but by former Chief Judge Goldhaber in *In re New Yorketown Associates,* 40 B.R. 701, 702–06 (Bankr.E.D.Pa. 1984); and *In re Jones,* 20 B.R. 988, 993–94 (Bankr.E.D.Pa.1982).

We do note that we do not join present Chief Judge Twardowski in his analysis that "reasonably equivalent value" can be ascertained by adding the debt satisfied by the foreclosure to the price paid. *See In re Brunell,* 47 B.R. 830, 831 (Bankr.E.D.Pa. 1985), *aff'd,* 76 B.R. 64 (E.D.Pa.1985). We note that the district court, in affirming *Brunell,* held that a sale could be held to realize less than reasonably equivalent value if the debtors lost a significant equity in the premises by means of the sale, even if the debt satisfied plus the price paid exceeded the sale price. 76 B.R. at 66–67 n. 2. Here, as in *Butler,* 75 B.R. 531 n. 4, and consistent with the District Court's analysis in *Brunell,* where the Debtors have a considerable equity in the Premises, we shall compare the sale price to the value of the home.

We therefore have little hesitancy in concluding that the Debtors satisfy the requirement of establishing that they received "less than a reasonably equivalent value" in the sheriff's sale of February 18, 1987, per 11 U.S.C. § 548(a)(2)(A).

The advocacy of the Debtors' counsel on the issue of insolvency was, frankly, puzzling. Counsel initially suggested that this issue could be proven simply by showing that the Debtors were having difficulty paying their bills as of the date of sale. Counsel eschewed any reference to the Debtors' Chapter 13 Statement, which included a modest evaluation of the Debtors' assets [4] and listed an electric bill of almost $3,968.96. The Debtors' testimony of their assets and liabilities, elicited only in response to questioning by the court, indicated that the Debtors felt that it was in their best interest in these proceedings to evaluate their property at the highest possible figure and minimize their debts. Of course, for the purposes of establishing insolvency, the exact opposite was true. Thus, the Wife–Debtor provided the apparently unrealistically high evaluation of the Debtors' furnishings at $6,000.00 and a 1980 motor vehicle at $4,000.00. The Husband–Debtor attempted to inflate the value of the Debtors' bedroom set, waterbed, and refrigerator, and minimize the electric bill.

However, the Debtors received some unexpected help from the Respondents. Counsel for Willow Grove place significant emphasis on the amount of proceeds received by the Debtors from the sale; however, rather than this figure being $10,-000.00, as he asserted at the hearing, it proved to be but $1,246.27. Also, the magnitude of the electric bill, pegged by the Husband–Debtor as "at least $1,000.00" (clearly an understatement), was adduced in questioning by counsel from Willow Grove.

Since the Debtors erroneously perceived it to be in their best interests to evaluate all of their property as high as possible and to minimize their debts, we must conclude that their property is worth no more than they indicated and that their indebtedness to the electric company is at least as much as they recited at the hearing. However, even accepting the figures given by them, the Debtors were clearly insolvent "as a result of" the challenged transfer, 11 U.S.C. § 548(a)(2)(B)(i), i.e., immediately after the sale.

---

**4.** In fact, the Statement was clearly too modest for the purposes of § 548(a)(2)(A), as the value of the Premises was set forth therein at $75,-000.00. But see page 35, n. 3 *supra,* where we indicate that we cannot consider the Statement as part of the record.

Their financial condition, per their perfectly credible testimony of value and deducting therefrom the minimum possible exemptions to which they were entitled, per 11 U.S.C. § 101(31)(A)(ii), was as follows:

| ITEM | VALUE | EXEMPTIONS | NON–EXEMPT VALUE |
|---|---|---|---|
| 1980 Bronco | $4,000.00 | $1,200.00 (per 11 U.S.C. § 522(d)(2))[5] $2,800.00 (per 11 U.S.C. § 522(d)(5))* | — |
| 1980 Toyota | 100.00 | $100.00 (per 11 U.S.C. § 522(d)(5))* | — |
| Furnishings | 6,000.00 | $8,000.00 (per 11 U.S.C. § 522(d)(3)) | — |
| Sale Proceeds | 1,247.27 | $1,247.27 (per 11 U.S.C. § 522(d)(5))* | — |
| | | Assets | 0 |
| | | Debt (Electric Bill) | $1,000.00 |
| | | Assets Less Liabilities | − 1,000.00 |

*Up to $8,300.00 "Wild-Card exemption" (per 11 U.S.C. § 522(d)(5)).

Clearly, then, the Debtors were rendered "insolvent" by the sheriff's sale of February 18, 1987, and meet the requirement of 11 U.S.C. § 548(a)(2)(B)(i). Having met the necessary requirements, they are entitled to a Decree avoiding the transfer effected by the sheriff's sale of February 18, 1987.

This result does not resolve all of the Debtors' difficulties. The invalidation of the sheriff's sale restores the mortgages of Willow Grove and NCNB, enhanced by reasonable costs and attorney's fees. *See In re Nickleberry,* 76 B.R. 413, 420–23 (Bankr.E.D.Pa.1987). Also, it appears that Mather was a transferee who took for value and in good faith, and he may also have a lien on the premises in some amount. See 11 U.S.C. § 548(c).

However, like the court in *In re Jackson,* 76 B.R. 597, 600 (Bankr.N.D.Tex.1987), we must conclude that the skimpy record put before us does not permit us to determine the rights of the mortgagees and Mather under 11 U.S.C. § 548(c). We shall thus direct these parties to file Proofs of Claim or Amended Proofs of Claim within twenty (20) days from the date of this Order setting forth their Claims in light of this decision.

We note that a Confirmation Hearing on the Debtors' Plan is scheduled on November 18, 1987. We will cancel that hearing and allow the mortgagees or Mather to file Proofs of Claim or Amended Proofs of Claim on or before November 27, 1987; require the Debtors' counsel to file any Objections to any Proofs or Amended Proofs of claim on or before December 7, 1987; and reschedule the Confirmation Hearing for January 12, 1988. We are not prepared to say that we have the degree of confidence in the Debtors' counsel that we had in counsel for the Debtors in *Butler* to prepare an appropriate Plan to preserve the liens of all claimants and cure the mortgage delinquencies. 75 B.R. at 533. However, the equities of the parties involved in this proceeding, being comparable to those which we considered in *Butler, id.,* convince us that the Debtors and their counsel, who certainly deserves commendation for her persistence, should be given an opportunity to do so.

---

**5.** If this vehicle were jointly owned, the exemption would be $2,400.00. We are, as noted at page 34 n. 2 *supra,* compelled to disregard the assertions in the Debtors' Brief that this vehicle was acquired post-petition and is subject to a $2,000.00 encumbrance.

An Order consistent with this Opinion shall be entered by us.