**In re James H. O'NEILL, Debtor.**

**James H. O'NEILL, Plaintiff,**

**v.**

**Ronald W. & Roberta E. DELL, Beneficial Mutual Savings Bank, Chester County Treasurer, Commonwealth of Pennsylvania, Downingtown National Bank, First Deposit National Bank, Helen Young, Tax Collector and Robert A. Erling, Sheriff of Chester County, Defendants.**

**Bankruptcy No. 96–13837DAS.**

**Adversary No. 96–1079DAS.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Jan. 30, 1997.

the cases are factually quite different from the situation here.

Alison Douglas Knox, Philadelphia, PA, Mediator.

Kenneth J. Benton, Philadelphia, PA, for Debtor.

Edward J. Hayes, Philadelphia, PA, for Defendants Ronald W. & Roberta E. Dell.

Douglas J. McGill, Philadelphia, PA, for Defendant Beneficial Mutual Savings Bank.

C. Robert Elicter, Jr., West Chester, PA, for Defendant Chester County Treasurer.

Thomas C. Abrahamsen, West Chester, PA, for Defendant Chester County Treasurer.

Nicholas J. Lamberti, Pa. Department of Revenue Dept. 281061, Harrisburg, PA, for Defendant Commonwealth of PA.

Anthony R. Distasio, Reading, PA, for Defendant Downingtown National Bank.

Melvyn Mantz, Doylestown, PA, for Defendant First Deposit National Bank.

Robert C. Houpt, Paoli, PA, for Defendants Helen Young, Tax Collector, and Robert A. Erling, Sheriff of Chester County.

Michael J. Reed, Ryan, Reed & Wochok, Paoli, PA, Alleged State Court Counsel for Debtor.

Edward Sparkman, Philadelphia, PA, Standing Chapter 13 Trustee.

## OPINION

DAVID A. SCHOLL, Chief Judge.

### A. INTRODUCTION

At issue in this adversary proceeding ("the Proceeding") is whether a sheriff's sale of a residence co-owned by JAMES H. O'NEILL ("the Debtor") for less than forty (40%) percent of its fair market value can be set aside, on two alternative bases. The first alternative is based on 11 U.S.C. § 548(a)(2). It features a contention that the failure of a suspended lawyer, Jonathan Van Loan, to file a bankruptcy case which the Debtor paid him in full to file prior to the sale constituted a sufficient "irregularity" in the sheriff's sale as to overcome the holding in *BFP v. Resolution Trust Co.*, 511 U.S. 531, 544–46, 114 S.Ct. 1757, 1765, 128 L.Ed.2d 556 (1994), that § 548(a)(2) cannot be utilized to challenge a regularly-conducted sheriff's sale, irrespective of the relationship of the sale price to the value of the property sold. The second alternative asserts that the sale constituted a voidable preference pursuant to 11 U.S.C. § 547. The Debtor proposes to overcome the requirement of 11 U.S.C. § 547(b)(5) by arguing that late fees of $96.08 were added to the default judgment entered on the mortgage foreclosure complaint filed against him by the judgment creditor after the mortgage note had been accelerated, allegedly in contravention of Pennsylvania law, which resulted in that creditor's receiving more from the sale than it would have received in a Chapter 7 liquidation.

Despite our considerable sympathy for the Debtor's plight, we are constrained to hold that neither claim is sufficient to overcome the impediments created by *BFP* and § 547(b)(5), respectively. We find that the malfeasance of Van Loan was not sufficiently related to the procedure of the sheriff's sale as to constitute the requisite "irregularity." With respect to the preference claim, the small sum allegedly received by the judgment creditor in excess of its legitimate secured claim cannot be contested because it is included in a valid state-court judgment. And, if this factor could be considered, it is not sufficiently attributable to the alleged preference as to overcome § 547(b)(5). Consequently, we hold that the sheriff's sale cannot be set aside.

### B. FACTUAL AND PROCEDURAL HISTORY

The Debtor filed the underlying voluntary Chapter 13 bankruptcy case on April 30, 1996. The meeting of creditors in the case was scheduled to take place on August 5, 1996, and a confirmation hearing was originally scheduled on November 14, 1996. The meeting did not take place because the Debtor reported that he intended to convert this case to a Chapter 7 case.

No conversion had occurred as of September 17, 1996, when the Debtor filed the instant Complaint to Avoid Preferential Transfer and/or a Fraudulent Conveyance ("the Complaint") seeking to avoid the sheriff's sale of a home, which he previously co-owned with his ex-wife, Ann Marie O'Neill, located at 430 Brandywine Road, West Chester, Pennsylvania ("the Home").

In addition to the purchasers of the Home at the sheriff's sale, ROBERTA A. and RONALD W. DELL ("the Dells"), and the judgment creditor responsible for the sale, BENEFICIAL MUTUAL SAVINGS BANK ("Beneficial"), the Debtor joined all of the recipients of the proceeds of the sheriff's sale of the Home as defendants to the Proceeding. These other persons and entities are FIRST DEPOSIT NATIONAL BANK ("1st Deposit"); HELEN YOUNG, the tax collector of West Chester Borough ("Young"); DOWNINGTOWN NATIONAL BANK ("DNB"); the COMMONWEALTH OF PENNSYLVANIA ("PA."); ROBERT A. ERLING, the Chester County sheriff ("the Sheriff"); and the CHESTER COUNTY TREASURER ("the Treasurer"). He did not, however, join Edward Sparkman, Esquire, the Standing Chapter 13 Trustee ("the Trustee"), as a party. The only real parties of interest, in addition to the Debtor and his ex-wife, are Beneficial, the Dells, and the Trustee. Beneficial obtained a default judgment and damages in a mortgage foreclosure action against the Debtor. The Dells successfully bid for the Home at the sheriff's sale scheduled in execution of that judgment.

Most, if not all, of the various defendants filed Answers to the Complaint. The trial was twice continued from October 29, 1996, to November 26, 1996, and then continued

again on a must-be-heard basis to December 4, 1996. We also noted at the trial that, since the Debtor had not proceeded to convert this case to Chapter 7, he must appear at meeting of creditors on that date, which was easily accomplished because the Trustee's representative was present.

On the date of the trial, the Debtor filed a Motion for Summary Judgment in his favor ("the SJ Motion"), supported with a lengthy Memorandum of Law ("the Memo"). We were not prepared to rule on the SJ Motion prior to trial. At the close of the trial, the parties agreed to our suggestion that a mediator be appointed pursuant to our court-annexed mediation program to attempt to settle the Proceeding, and they agreed upon the selection of Alison Douglas Knox, Esquire ("the Mediator"), for that purpose. We also gave all of the parties an opportunity to file briefs in support of their respective positions, with the briefs of the Defendants responsive to the Debtor's Memo due on or before December 16, 1996, and the Debtor's reply brief due on or before December 27, 1996. It was agreed that PA. could be eliminated as a party in light of its claim of judicial immunity. See *Seminole Tribe of Florida v. Florida*, —— U.S. ——, —— — —— & n. 16, 116 S.Ct. 1114, 1131–32 & n. 16, 134 L.Ed.2d 252 (1996).

Only Beneficial, the Dells, and DNB, among the Defendants, filed briefs, doing so in timely fashion, and the Debtor filed his reply brief pursuant to his request for a short extension until December 31, 1996. The Mediator has reported that she has been unsuccessful in achieving any resolution, requiring us to proceed to decision.

The facts underlying this Proceeding began in November 1994 with the failure of the Debtor and his ex-wife to make payments due on a mortgage on the Home incurred on June 28, 1976, in the amount of $23,000, from Fidelity Bond and Mortgage Co., which assigned the loan to Beneficial. Although mentioned by the Debtor in his testimony, the mortgage itself and the related documents were not offered or admitted into evidence.

Beneficial proceeded to file a mortgage foreclosure action against the Debtor and his wife in the Chester County Court of Common Pleas ("the CCP") on June 22, 1995, at Docket No. 95–05775 ("the CCP Case"). When the defendants did not respond to the Complaint in the CCP Case, a default judgment was entered in the CCP Case on November 1, 1995, against the Debtor and his ex-wife and in favor of Beneficial, in the amount of $20,344.53. Along with its request for entry of a default judgment, Beneficial also filed a Praecipe for Assessment of Damages which included a demand for late charges against the Debtor in the amount of $24.02 per month from November 1994 to November 1995. After the entry of the judgment, which the Debtor and his ex-wife have not attempted to attack in the CCP in any manner, Beneficial scheduled the Sheriff's sale of the Home on February 16, 1996.

As was verified by both the Debtor and Van Loan, the latter having been subpoenaed to testify, the Debtor was contacted by Van Loan in December, 1995 after Van Loan discovered, by reviewing judgments entered in the CCP, that the Sheriff's sale of the Home was scheduled to take place on February 16, 1996. Van Loan offered his services to the Debtor, which featured the filing of a bankruptcy petition on his behalf in order to stop the Sheriff's sale of the Home.

The Debtor met with Van Loan on December 26, 1995. At that time Van Loan advised the Debtor that he would file the bankruptcy petition on the Debtor's behalf upon the payment of his fee of $1,500. The Debtor paid Van Loan $1,000 of his $1,500 fee on that date, and then paid him the $500 balance of the fee on January 11, 1996. On the latter date, Van Loan showed Debtor a copy of the bankruptcy petition and papers which he drafted and had the Debtor sign the papers. Van Loan advised the Debtor that he would file the petition with this court on that same day, and the Debtor assumed that this would be done. Unfortunately for the Debtor, however, Van Loan did not file the petition that day or any other day, because, as he had neglected to inform the Debtor, he had been placed on inactive status by the Pennsylvania Supreme Court by an order of that court dated November 28, 1995, and thus could not file any legal papers on the Debtor's behalf.

Unbeknown to the Debtor, the Sheriff's sale of February 16, 1996, was not stayed,

since no bankruptcy was in fact filed on his behalf, and, after a sale featuring significant bidding, the Home was sold to the Dells for $40,000. The proceeds of the sale were first applied to satisfy Beneficial's default judgment entered by the CCP against the Debtor and his ex-wife. Testimony was introduced at trial that the Debtor was notified of the sale by the Sheriff's posting a notice of the date and time of the sale at the Home prior to the sale. However, the Debtor, believing without any doubt that Van Loan had filed his bankruptcy petition, thought that the notice was in error and did not check to see if the bankruptcy filing and the stay were in place.

After the sale, the deed to the Home was transferred to the Dells on April 10, 1996. The proceeds of the Sheriff's sale were distributed as follows: $21,729.25, including $96.08 in post-judgment late charges, to Beneficial in full satisfaction of its mortgage foreclosure judgment; $2,260.13 to the Sheriff for costs of the sale; $1,849.70 to the Treasurer for unpaid local taxes; $1,045.83 to PA. for the deed's state transfer tax; $1,045.83 to the Borough of West Chester for the local transfer tax; $6,647.16 and $6,344.60 to DNB and 1st Deposit, respectively, on junior judgment liens; and $77.50 to Young for unpaid real estate taxes, all referenced on Exhibit 8 to the SJ Motion.[1]

On April 20, 1996, Van Loan contacted Kenneth J. Benton, Esquire, to request that Benton file the Debtor's bankruptcy petition in light of the fact that Van Loan was still on inactive status. Benton agreed to do so and contacted the Debtor to obtain his permission to file the petition. It was not until this date that the Debtor became aware that his bankruptcy petition had not yet been filed.

Benton filed the Debtor's bankruptcy petition on April 30, 1996, as yet unaware that the Home had previously been sold at the February 16, 1996, Sheriff's sale. It was only when he contacted Beneficial to determine how much was owed on the Debtor's

mortgage that he learned that the Home had been sold. Benton then contacted Van Loan, who ultimately informed the Debtor of the sale of the Home.

Ronald Dell testified that, shortly after the Sheriff's sale, he attempted to contact the Debtor to advise him of the sale, but that several messages were left unanswered. He stated that, while Van Loan had contacted him in late May 1996 about the matter, he was unable to reach the Debtor until some time later. Upon finally reaching him, and after a short period of negotiation, the Debtor, on July 7, 1996, signed a Residential Lease of the Home from Ronald Dell calling for $800 monthly rent.

The Debtor's Complaint in this Proceeding, as well as his SJ Motion, asserts that the Home was worth $130,000 at the time of its sale to the Dells for $40,000. There was evidence that the Home was valued at $104,500 for purposes of computing the transfer tax, and Mr. Dell conceded that it was worth at least $80,000. This sale price, argues the Debtor, is considerably less than the "reasonably equivalent value" of the Home. The Debtor also asserts that, the "fraud" of Van Loan perpetuated upon the Debtor which caused the Home to be sold at such a deflated price constituted an "irregularity" in the sale, allegedly taking it out of the scope of sales protected by the reasoning of *BFP, supra.* The Debtor further asserts that the amount of money paid to Beneficial from the proceeds of the Sheriff's sale in satisfaction of its foreclosure judgment included late fees which were imposed after the foreclosure complaint was filed, in contravention of the law of Pennsylvania. Consequently, he argues that Beneficial "obtained more during the ninety-day preference period, vis-a-vis the late fees, than it would have obtained in a Chapter 7 liquidation, thus permitting avoidance of the sale as a preferential transfer under 11 U.S.C. § 547(b)." Complaint, at ¶ 2.

---

1. These amounts total $41,000, rather than $40,000, and the records of distribution include both handwritten figures and typewritten figures. No evidence was presented regarding the author of the handwritten figures. However, Exhibit 9 of the SJ Motion is a Chester County Property Record Inquiry which indicates that the property was sold for $40,000. Additionally, the deed executed on the Home by the Sheriff designates the sale price as $40,000. Therefore, we assume the accuracy of the $40,000 figure for the sale price of the Home at the Sheriff's sale and are unable to explain the discrepancy in the distribution.

## C. DISCUSSION

1. *The Sheriff's Sale Cannot Be Avoided Pursuant to 11 U.S.C. § 548(a)(2) Because the Debtor Has Not Satisfied His Burden of Proving That "Reasonably Equivalent Value" Was Not Received for the Purchase of the Home in Light of the Reasoning of BFP.*

In Count II of the Complaint the Debtor asserts a claim seeking to avoid the Sheriff's sale pursuant to 11 U.S.C. §§ 548(a)(2)(A), (a)(2)(B)(i), which provides as follows:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

. . . . .

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

. . .

At one time there was little doubt in our mind that § 548(a)(2)(A) could be utilized to set aside a pre-petition sheriff's sale as long as the Debtor proved that (1) a sheriff's sale occurred within a year of the Debtor's filing bankruptcy, *see Butler v. Lomas & Nettleton Co.*, 862 F.2d 1015, 1018–19 (3d Cir.1988) ("*Butler II*"), *rev'g In re Butler*, 75 B.R. 528 (Bankr.E.D.Pa.1987) ("*Butler I*"); (2) the debtor's insolvency despite of, or as a result of, the sale; and (3) the property was sold at less than seventy (70%) percent of its fair market value. *See In re Cole*, 81 B.R. 326, 329–31 (Bankr.E.D.Pa.1988); *In re Corbett*, 80 B.R. 32, 36–38 (Bankr.E.D.Pa.1987); and *Butler I, supra*, 75 B.R. at 531–32. *See also In re Brasby*, 109 B.R. 113, 120–25 (Bankr.

E.D.Pa.1990) (FOX, J.), *aff'd sub nom. Brasby v. Joseph C. Perry, Inc.*, 1992 WL 21362 (E.D.Pa. Jan. 29, 1992); *In re Brunell*, 47 B.R. 830, 831 (Bankr.E.D.Pa.) (TWARDOWSKI, CH. J.), *aff'd*, 76 B.R. 64 (E.D.Pa.1985); and *In re Jones*, 20 B.R. 988, 993–94 (Bankr. E.D.Pa.1982) (GOLDHABER, CH. J.).[2]

After a remand of our initial decision in *In re Barrett*, 104 B.R. 688 (Bankr.E.D.Pa. 1989), *vacated & remanded*, 111 B.R. 78 (E.D.Pa.1990), we set forth in detail our analysis of "reasonably equivalent value" in *In re Barrett*, 113 B.R. 175, 180–84 (Bankr.E.D.Pa. 1990), noting that sheriff's sale procedures were not conceived to yield fair market values of properties sold and for that reason should be subject to attack under § 548(a)(2) if less than seventy (70%) percent of the fair market value were obtained in such a sale.

However, this decision was reversed in *In re Barrett*, 118 B.R. 255 (E.D.Pa.1990), and the latter result was affirmed in *Barrett v. Commonwealth Federal Savings & Loan Ass'n*, 939 F.2d 20 (3d Cir.1991). In the final *Barrett* decision the Court of Appeals determined that the seventy (70%) percent benchmark could not be sustained, *id.* at 25; and determined that the price realized at the sheriff's sale need only be that obtained in a typical sheriff's sale setting to provide "reasonably equivalent value." *Id.* at 24. The court did allow that a review of the "totality of the circumstances" of the sale, including the procedures employed to, *inter alia*, secure the debtor-mortgagor's equity in the process, should be utilized in determining whether § 548(a)(2) was violated, citing *In re Bundles*, 856 F.2d 815, 821 (7th Cir.1988). The upshot of the final *Barrett* decision was, however, severe curtailment, if not elimination, of the use of § 548(a)(2) to avoid pre-bankruptcy sheriff's sales. The principle that the "reasonably equivalent value" to be measured was that of a typical *sheriff's* sale rather than of a typical private sale was not

---

**2.** The Debtor's Schedules establish insolvency. There is little question, despite the raising of this issue by the Dells and Beneficial, that the Debtor has standing to maintain such a proceeding pursuant to 11 U.S.C. §§ 522(h), (g)(1). *See Butler II*, 862 F.2d at 1016, *aff'g, Butler I*, 75 B.R. at 530; and *In re Mason*, 69 B.R. 876, 881–82 (Bankr.E.D.Pa.1987). The only procedural deficiency in the Proceeding which we perceive was

the failure to name the Trustee as a party to the Proceeding. The Trustee's active participation in the litigation of the Proceeding was, however, sufficient in our view to cause us to refrain from taking any action to cure this defect. *See In re Kent, Kent v. CIGNA*, Bankr. No. 095–14602DAS, Adv. Nos. 96–1227 and 96–1238, slip op. at 24, 1997 WL 20507 (Bankr.E.D.Pa. Jan. 15, 1997).

expressed in *Bundles* and was the feature of the final *Barrett* decision which set the principles established therein far apart from those established in our own decision in that case.

If that development were not ominous enough for the cause invoked by the Debtor here in his § 548(a)(2) claim, the decision in *BFP* certainly was. The Supreme Court, in a decision constituting a law of the land, expressed concern about the disruption that any review of state court sheriff's sale procedures would have upon the states' administration of justice. 511 U.S. at 536–46, 114 S.Ct. at 1761–65. The Court then concluded, *id.* at 544–46, 114 S.Ct. at 1765:

> For the reasons described, we decline to read the phrase "reasonably equivalent value" in § 548(a)(2) to mean, in its application to mortgage foreclosure sale, either "fair market value" or "fair foreclosure price" (whether calculated as a percentage of fair market value or otherwise). We deem, as the law has always deemed, that a fair and proper price, or a "reasonably equivalent value," for foreclosed property, is the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with.
>
> This conclusion does not render § 548(a)(2) superfluous, since the "reasonably equivalent value" criterion will continue to have independent meaning (ordinarily a meaning similar to fair market value) outside the foreclosure context. Indeed, § 548(a)(2) will even continue to be an exclusive means of invalidating some foreclosure sales. Although *collusive* foreclosure sales are likely subject to attack under § 548(a)(1), which authorizes the trustee to avoid transfers "made ... with actual intent to hinder, delay, or defraud" creditors, that provision may not reach foreclosure sales that, while not intentionally fraudulent, nevertheless fail to comply with all governing state laws. *Cf.* 4 L. King, COLLIER ON BANKRUPTCY, ¶ 548.02, p. 548–35 (15th ed. 1993) (contrasting subsections (a)(1) and (a)(2)(A) of § 548). Any irregularity in the conduct of the sale that would permit judicial invalidation of the sale under applicable state law deprives the sale price of its conclu-

sive force under § 548(a)(2)(A), and the transfer may be avoided if the price received was not reasonably equivalent to the property's actual value at the time of the sale (which we think would be the price that would have been received if the foreclosure sale had proceeded according to law).

In wake of *BFP*, despite the Court's expressed disaffirmance of its opinion's application to forced tax sales, *id.* at 537 n. 3, 114 S.Ct. at 1761 n. 3, several decisions have taken the further step of refusing to set aside seemingly egregious tax sales by application of the reasoning of *BFP*. *See In re T.F. Stone Co.*, 72 F.3d 466 (5th Cir.1995) (property worth $65,000 sold for $325); *In re Golden*, 190 B.R. 52 (Bankr.W.D.Pa.1995) (properties worth $28,000 and $8,000 sold for $7,900 and $2,203.94, respectively); and *In re Lord*, 179 B.R. 429 (Bankr.E.D.Pa.1995) (SIGMUND, J.) (property worth $160,000 sold for $13,469.33). While we are not prepared to thusly pronounce a death knell upon the use of § 548(a)(2) to avoid any judicial sales, we are unaware of any decisions of this court which have allowed either sheriff's sales or tax sales to be avoided under § 548(a)(2) since *BFP*.

■ The Debtor's claims, equitable though they may be, must be considered from the prospective of this bleak legal landscape. In order to make a determination regarding whether the Debtor has satisfied the "less than the reasonably equivalent value" test of 11 U.S.C. § 548(a)(2), we must confine ourselves to determining whether the instant Sheriff's sale was conducted according to Pennsylvania law because, as the United States Supreme Court stated in *BFP*, "reasonably equivalent value" for a foreclosed property is presumed to be the price which is paid for a property at the foreclosure sale if all the requirements of the particular state's foreclosure laws have been met in conducting the sale. Consequently, if all of the requirements of Pennsylvania law were met in the conduct of the Sheriff's sale of the Home, then we must hold that the price paid for the Home at the Sheriff's sale in this case was its "reasonably equivalent value."

■ In that regard, Pennsylvania law provides that, *after* a sheriff's deed has been recorded and delivered to the purchaser of a property at a sheriff's sale, the only acceptable reason for a court to allow a contest of the sheriff's sale is fraud in the sale or the sheriff's lack of authority to sell the property. *See Concord–Liberty Savings & Loan Ass'n v. NTC Properties, Inc.*, 454 Pa. 472, 476, 312 A.2d 4, 5–6 (1973); *Garrison v. Erb*, 424 Pa. 306, 309, 227 A.2d 848, 849 (1967); *Knox v. Noggle*, 328 Pa. 302, 304, 196 A. 18, 19 (1938); *Lengert v. Chaninel*, 208 Pa. 229, 232, 57 A. 561, 561 (1904); *Workingmen's Savings & Loan Ass'n of Dellwood Corp. v. Kestner*, 438 Pa.Super. 186, 189, 652 A.2d 327, 328 (1994); and *Kowatch v. Home Building & Loan Ass'n of Latrobe*, 131 Pa.Super. 517, 522, 200 A. 111, 113 (1938).

■ The deed to the Home was recorded and delivered to the Dells on April 10, 1996. The Debtor's Complaint in this Proceeding was not filed until September 17, 1996. Thus, it is clear that the Sheriff's deed was recorded and delivered to the Dells prior to Debtor's filing of the Complaint. Unfortunately for the Debtor, Pennsylvania law holds that the only reason we can accept for his contest of the sheriff's sale at that point is fraud in the sale or the sheriff's lack of authority to sell the property, neither of which has been shown in this case.

■ There is no evidence that the Dells, nor any other defendant, knew of the Debtor's circumstances, or more specifically of Van Loan's destructive intervention, nor that they had any knowledge of the mutual intentions and plans of the Debtor and Van Loan to prevent the Sheriff's sale by Van Loan's filing of a bankruptcy petition on the Debtor's behalf. Defendant Ronald Dell testified that he found out about the Sheriff's sale through the public notice in the local newspaper. He never spoke to the Debtor nor to anyone at Beneficial prior to the Sheriff's sale. Nor did he learn about any of the specifics of the Debtor's circumstances, including his intention to file bankruptcy, until he contacted him to offer to lease back the Home to him in June or July. Pennsylvania law holds that the interests of a bona fide purchaser are protected if he purchases property without notice of any prior interests, even equitable interests. *Butler II, su-*

*pra*, 862 F.2d at 1018; *Lund v. Heinrich*, 410 Pa. 341, 346, 189 A.2d 581, 584 (1963); and *Long John Silver's, Inc. v. Fiore*, 255 Pa.Super. 183, 190, 386 A.2d 569, 573 (1978). Therefore, we conclude that the Dells acted in good faith when they purchased the Home at the Sheriff's sale. Consequently, there is no evidence of any of the kind of fraud which would justify avoiding the Sheriff's sale under § 548(a)(2) according to *BFP*.

Similarly, there is no evidence that the Sheriff committed any fraud in conducting the Sheriff's sale. Pennsylvania Rules of Civil Procedure ("Pa.R.Civ.P.") 3101, *et seq.*, govern the enforcement of money judgments for the payment of money. The Rules provide, among other things, for notice of the sale of real property in Pa.R.Civ.P. 3129.2; indicate how the sale proceeds must be distributed and the priority of distribution in Pa.R.Civ.P. 3135, 3137; and, perhaps most relevant to this case, the procedure for setting aside a sale in Pa.R.Civ.P. 3132. Specifically, Pa.R.Civ.P. 3132 provides that

[u]pon petition of any party in interest *before delivery* of the personal property or *of the sheriff's deed to real property*, the court may, upon proper cause shown, set aside the sale and order a resale or enter any other order which may be just and proper under the circumstances (emphasis added).

*See Marra v. Stocker*, 532 Pa. 187, 615 A.2d 326 (1992) (petition to set aside a sheriff sale, if timely under Pa.R.Civ.P. 3132, is an equitable proceeding, governed by equitable principles); and *Doherty v. Adal Corp.*, 437 Pa. 109, 261 A.2d 311 (1970) (same). Testimony elicited at the trial proves that the Sheriff properly published the notice of the sale in the newspaper and posted it on the Home. No evidence was presented that the Home was not correctly described in the notice of sale. Public bidding occurred at the sale, which was competitive. Therefore, we conclude that the Sheriff's sale was noncollusive and conducted according to Pennsylvania law.

The only argument presented by the Debtor is that what he terms as the "fraud" of Van Loan, in not filing a bankruptcy prior to the Sheriff's sale as promised, constitutes

conduct which could result in a decision by this court to overturn the Sheriff's sale pursuant to § 548(a)(2). However, the "fraud" of Van Loan does not relate to the procedures by which the Sheriff's sale was conducted. The only fraud which *BFP* indicates would constitute grounds to avoid a sheriff's sale is fraud which is directly involved in the sheriff's sale itself. This is consistent with the Pennsylvania case law cited at pages 887–888 *supra*, which holds that the only way to overturn a sheriff's sale is if there was fraud *in conducting the sheriff's sale. See Garrison, supra*, 424 Pa. at 309, 227 A.2d at 849. In this case, while it is true that the wrongdoing by Van Loan in one sense caused the Debtor's Home to be sold at the Sheriff's sale, since, if he had filed the Debtor's bankruptcy petition when he was supposed to file it, the Sheriff's sale would have been stayed, this fraud is separate and apart from the procedures under which the Sheriff's sale itself was conducted and therefore cannot be held against the Dells as good faith purchasers of the property at the sale.

Had the Debtor filed this Proceeding prior to April 10, 1996, when the deed to the property was recorded and delivered to the Dells, he would have had a somewhat stronger argument. *See Knox, supra*, 328 Pa. at 305, 196 A. at 20 ("Inadequacy of price is an objection that can be raised only by a rule to set aside the sale taken *before* acknowledgment and delivery of the deed. . . .") (emphasis added). Unfortunately, though perhaps justifiably under the circumstances, he did not take action until after the deed had passed.

It is of little legal consequence that the Debtor was unaware that the Sheriff's sale occurred on February 16, 1996. Although the circumstances provide some explanation for his actions, the Debtor himself must take some responsibility for his lack of knowledge of the sale because he made no attempts to contact Van Loan at all over a period of about four months, despite the fact that the Sheriff's sale notice was posted on his door

and despite the fact that Mr. Dell attempted to contact him several times subsequent to the Sheriff's sale to inform him that the Dells had purchased the Home. With of course the benefit of hindsight, we observe that a more vigilant debtor could have discovered Van Loan's malfeasance before or shortly after the Sheriff's sale.

In any event, it is impossible not to conclude that the Dells are entirely innocent of any involvement with Van Loan's actions and are hence simply good faith purchasers. The only aspect in the Debtor's favor is the fact that he appears to have legitimate claims against Van Loan, which he has allegedly asserted in state court.[3]

In making an argument that Van Loan's malfeasance may constitute the sort of irregularity which would permit the debtor to overcome the impact of *BFP*, the Debtor relies heavily upon the decision in *Estate of Gasbarini v. Medical Center of Beaver County, Inc.*, 487 Pa. 266, 409 A.2d 343 (1979). In that case, the widow of a patient who died while in the care of the two defendant doctors at the defendant Medical Center of Beaver County, Inc. sought appointment as the administratrix of her husband's estate. Shortly after his death she applied for letters of administration, but was not appointed as administratrix because the attorney that she retained did not pay the $500 bond required by law.

The widow's attorney then attempted to commence an action in trespass by summons against the medical center and two doctors, in which the plaintiff was identified on the summons as "Estate of Gabriel C. Gasbarini a/k/a Gabriel C. Gasbarini." However, the court ultimately entered a judgment of non pros due to the negligence of the widow's attorney in failing to respond to the medical center's rule to file a complaint. The attorney then filed a complaint with the court, but the case was dismissed for failure to respond to preliminary objections raising the issue that the estate of the decedent was not a

---

**3.** We note that an action was reportedly commenced and continues to be handled by an attorney identified as Michael Reed, Esquire, in the CCP. We note that Mr. Reed must be appointed as special counsel, preferably by the Trustee, if he desires to be compensated for his services.

Generally, only services performed after appointment are compensable, and therefore the delay, since at least the trial, in Mr. Reed's seeking appointment would appear to be greatly to his detriment.

proper party to bring the lawsuit. 487 Pa. at 268–69, 409 A.2d at 344.

Significant to the *Gasbarini* decision was the fact that the widow and her son had contacted the attorney numerous times to ascertain the status of the case. At all times, the attorney told them that the case was proceeding as it should. However, in early 1975 the widow learned that the attorney had been suspended from practicing law in November 1974. On May 19, 1975, the Supreme Court of Pennsylvania disbarred the attorney.

The widow was able to obtain new counsel, who posted the required bond, allowing her to be appointed administratrix of her husband's estate. He then filed a petition to reinstate her complaint and to amend the caption of that complaint to add her name as the administratrix of her husband's estate. The Pennsylvania Supreme Court, on appeal, held as follows:

> We can perceive no greater equitable considerations requiring the opening of a judgment than the fact that the attorney allegedly representing appellant had been suspended from the practice of law prior to the hearing at which appellee's preliminary objections had been sustained and appellant's complaint dismissed. Further, appellant's attorney never notified appellant of his suspension. Under these circumstances, it would be harsh, indeed, to hold that appellant's possible cause of action be lost forever because of the conduct of an attorney this court has deemed unfit for the practice of law in this Commonwealth.

487 Pa. at 270–72, 409 A.2d at 345. Thus, the court held that more than mere neglect of the attorney was involved in the case, distinguishing the case from those cases in which the Pennsylvania courts have held "that an attorney's neglect does not constitute extraordinary cause requiring the granting of the equitable relief of opening a judgment." 487 Pa. at 271, 409 A.2d at 345. The court reasoned that, under the facts in *Gasbarini*, the attorney could not have assisted the widow in arguing the preliminary objections because he has been suspended from the practice of law at the time that they were filed in the case.

The differences between *Gasbarini* and the instant Proceeding are several. First,

the neglect of the *Gasbarini* attorney caused the court to act in dismissing the plaintiff's initial case. The petition to reinstate was a request of the court to exercise control of its judgments in cases before it. Here, the malfeasance of Van Loan had no direct connection with a court judgment or a court's exercise of its discretion in handling its cases. Second, in *Gasbarini*, unlike in this case, there was no innocent third party involved whose rights would have been prejudiced in granting the requested relief, such as would the Dells in having their otherwise-proper Sheriff's sale overturned. Finally, unlike the widow and her son in *Gasbarini*, the Debtor herein made no attempts to contact his attorney to determine the status of his bankruptcy case nor of the impending sheriff's sale, the pendency of which he was notified. Thus, his equities are not as great.

■ Finally, it must be recalled that the *Gasbarini* decision is a Pennsylvania state court's decision interpreting Pennsylvania law. While *BFP* requires consideration of the foreclosure procedures under the applicable law of the particular state conducting the execution sale in issue, it constitutes an interpretation of a federal law, namely § 548(a)(2) of the Bankruptcy Code.

■ We note that it would have been possible for the Debtor to have challenged the Sheriff's sale in issue under the applicable state law opposing fraudulent conveyances, the Pennsylvania Uniform Fraudulent Transfer Act, 12 Pa.C.S. § 5101, *et seq.*, pursuant to 11 U.S.C. § 544(b). *But see In re Shields*, 148 B.R. 783, 785–86 (Bankr.E.D.Pa.1993) (the debtor had standing to invoke the predecessor to the UFTA, the Pennsylvania Uniform Fraudulent Conveyances Act, 39 P.S. § 351, *et seq.* (repealed) ("the UFCA"), to challenge a Pennsylvania sheriff's sale under § 544(b), but no cause of action for such relief was found to be provided under the UFCA). It would have also been possible for the Debtor to have invoked other state law principles under § 544(b). *Cf. Burge v. Fidelity Bond & Mortgage Co.*, 648 A.2d 414 (Del.1994) (Delaware sheriff's sale successfully challenged under equitable state law grounds). However, although the Debtor (mis)-cites to *Burge*, the instant Proceeding

does not challenge the Sheriff's sale under applicable Pennsylvania state law grounds, equitable or otherwise. In the context of such a challenge, state law and only state law could be considered. In such a challenge, this court would be obliged to adhere to the legal principles communicated in *Gasbarini*. However, in the contest of the instant challenge of the Sheriff's sale under applicable federal law, principles established under federal law must be considered.

In *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 396–97, 113 S.Ct. 1489, 1499, 123 L.Ed.2d 74 (1993), the Court addressed the analogous issue of the effect of the malfeasance of an attorney upon the rights of his client in the context of the federal Bankruptcy Code. *Pioneer* was a chapter 11 case in which the unsecured creditor attempted to obtain an extension of the deadline for filing late proofs of claim, alleging, *inter alia*, the neglect of its attorney in overlooking the bar date for filing claims. *Id.* at 384, 113 S.Ct. at 1492–93. While the creditor had timely advised its attorney of the need to file proofs of claim, the attorney inadvertently allowed the deadline for filing the proofs to expire before he filed the proofs of claims. *Id.* His excuse for the late filing was that the bar date designated in the Notice for Meeting of Creditors was not in its usual place on the notice. *Id.*

The Supreme Court held, in *Pioneer*, that Federal Rule of Bankruptcy Procedure 9006(b)(1), which permits bankruptcy courts to accept late filings when the failure to timely file resulted from "excusable neglect," allows courts to take into account equitable considerations in determining whether the late filing of a proof of claim can be permitted when it is due to "excusable neglect." *Id.* at 387–95, 113 S.Ct. at 1494–98. The Court determined that such "excusable neglect" was present in *Pioneer*, and it affirmed the decision allowing the creditor to file a late claim. *Id.* at 397–99, 113 S.Ct. at 1499–1500.

However, what is most relevant to the instant Proceeding are the Court's comments regarding the significance to be accorded to the negligence of the creditor's attorney, which was a factor in the lower court's determination in favor of the creditor. Referenc-

ing its holdings in prior cases that a client will be held accountable for the acts and omissions of its attorney, specifically the holdings in *Link v. Wabash R.R.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) (client may be held responsible for the dismissal of his lawsuit because of the failure of his attorney to attend a scheduled pretrial conference); and *United States v. Boyle*, 469 U.S. 241, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985) (client must be held responsible for his attorney's late filing of a tax return), the Court in *Pioneer*, held that, when deciding whether a respondent's failure to file proofs of claim prior to the bar date was excusable, "the proper focus is upon whether the neglect of respondents *and their counsel* was excusable." 507 U.S. at 397. Thus, the Court focused upon whether both the creditor *and* the attorney had committed negligence which could be deemed to be excusable. *Id.* at 396–97, 113 S.Ct. at 1499.

In weighing the claims of irregularity in the Sheriff's sale procedure pertinent to the § 548(a)(2) claims of the Debtor in this Proceeding, under the principles established in *Pioneer*, we are unable to give very much consideration to Van Loan's improprieties. Rather, *Pioneer* suggests that Van Loan's malfeasance must be attributed to the Debtor. It appears that in no sense can Van Loan's improprieties constitute an irregularity in the Sheriff's sale process which the Debtor can invoke to overcome the effect of *BFP*.

Consequently, we find that the Sheriff's sale proceeded in a regular fashion, according to Pennsylvania law. Therefore, the Debtor cannot avoid the Sheriff's sale on the basis of § 548(a)(2).

2. *The Sheriff's Sale Cannot Be Avoided Pursuant to 11 U.S.C. § 547(b) Because Beneficial's Receipt of Modest Late Charges as Part of Its Distribution of the Sale Proceeds Is Not a Sufficient Basis to Overcome the Debtor's Inability to Meet the Requirement of § 547(b)(5).*

The Debtor's attempt to invoke 11 U.S.C. § 547, which permits the avoidance of preferential payments to creditors, as a means of

overturning the Sheriff's sale is even more strained than his arguments under § 548(a)(2). Basically, he argues that the Sheriff's sale allowed Beneficial to recover a preference because it obtained an assessment of late fees on its mortgage foreclosure judgment in the amount of $24.02 per month covering the four-month period from June 22, 1995, to November 1, 1995, or a total of $96.08, in contravention of Pennsylvania law. He makes this argument in recognition of, and as an exception to, the impediment that 11 U.S.C. § 547(b)(5), which reads as follows, presents to avoidance of allegedly preferential payments to secured creditors:

> (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of any interest of the debtor in property—
>
> .    .    .    .    .
>
> (5) that enables such creditor to receive more than such creditor would receive if—
>
> (A) the case were a case under chapter 7 of this title;
>
> (B) the transfer had not been made;
>
> .    .    .    .    .

The Debtor is forced to acknowledge that a substantially oversecured creditor such as Beneficial would receive full payment in a Chapter 7 liquidation. Therefore, in order to meet its necessary burden of proving all of the elements of § 547(b), including § 547(b)(5), see, e.g., In re Lease–A–Fleet, Inc., 151 B.R. 341, 346–47 (Bankr.E.D.Pa. 1993), the Debtor was obliged to prove

> that the defendant is either an unsecured or an undersecured creditor. See e.g., In re Rimmer Corp., 80 B.R. 337, 339 (Bankr. E.D.Pa.1987) ("a payment to a secured creditor is not preferential"). Accord, In re Erin Food Services, Inc., 980 F.2d 792, 803 (1st Cir.1992).

Id. at 348. See also 5 COLLIER ON BANKRUPTCY, ¶ 547.03[7], at 547–41 (15th rev. ed. 1996).

This, the Debtor cannot do. Instead, he attempts to circumvent the fact that Beneficial was clearly oversecured at the time of the sale by arguing that, irrespective of the fact that Beneficial would have been entitled to nearly all that it obtained as the result of the Sheriff's sale in a Chapter 7 distribution,

its receipt of $96.08 to which it was allegedly not entitled rendered the entire transfer preferential.

In support of his position that Beneficial was not entitled to the $96.08 late charges, the Debtor relies exclusively upon Security Mut. Life Ins. Co. of New York v. Contemporary Real Estate Associates, 979 F.2d 329 (3d Cir.1992). In Security Mutual, the plaintiff insurance company sued its mortgagors on a delinquent mortgage note, and sought as damages the entire balance due on the note, plus interest, late fees, costs of collection and attorneys' fees. Id. at 330. The district court granted summary judgment in the plaintiff's favor. The judgment included $13,368.20 in late fees, $8,689.33 of which was for late fees incurred after the date that the plaintiff had filed its complaint in the district court. Id. The mortgagors appealed the district court's decision to the Court of Appeals, contending that the plaintiff's filing of the complaint terminated their obligation to make any further monthly payments and thus that no further late charges could possibly accrue. Id.

The Court of Appeals concluded that no Pennsylvania court had yet decided whether late fees could be imposed upon a debtor for failure to make monthly payments on a note after that note has been accelerated. Therefore, it held that it must predict how the Supreme Court of Pennsylvania would determine that issue. Id. The court also considered that few other courts in other jurisdictions had rendered published opinions on this issue either, but that the courts which had decided the issue had held that such late charges cannot be assessed against a borrower after a lender has accelerated payment of the note. Id., citing In re Tavern Motor Inn, Inc., 69 B.R. 138 (Bankr.D.Vt.1986); Crest Savings & Loan Ass'n v. Mason, 243 N.J.Super. 646, 581 A.2d 120 (Ch. Div.1990); and Lenio Reis v. Decker, 135 Misc.2d 741, 516 N.Y.S.2d 851 (Del.Co.Ct.1987). In concluding that the Pennsylvania Supreme Court would likely adhere to the decisions of the courts in Tavern Motor Inn, Crest Savings & Loan, and Lenio Reis in disallowing the imposition of late fees after the acceleration of a mortgage note in the absence of a

clause in the note allowing such charges, the Court of Appeals noted that the mortgage note did not include a provision allowing the imposition of late charges after the acceleration of the mortgage note. In response to the plaintiff's argument that the mortgagors could have circumvented the late fees by making the monthly payments after the bank accelerated the note, the court determined that the language of the note stating that the plaintiff could consider " 'the entire principal sum then remaining unpaid together with interest and any other outstanding amounts remaining unpaid immediately due and payable' " made it clear that all amounts were due and owing as of the date that the default complaint was filed. Thus, the court held that the mortgagors were not obliged to make any of the monthly payments due on the note after the plaintiff accelerated the payments and declared a default, since there was no provision in the note stating that such late fees were obligated to be paid. *Id.* at 331.

■ The mortgage note involved in the underlying instant mortgage transaction was not presented into evidence. Consequently, we cannot determine what this document contains as to the issue of whether late charges can be assessed after a declaration of a default on the note. The Debtor has therefore failed to meet its burden of presenting evidence that the contractual agreement into which he entered with Beneficial precludes the imposition of post-judgment late fees.

■ Thus, we find that the Debtor has not proven that the inclusion of $96.08 in late fees in its foreclosure judgment was contrary to its contractual rights. However, even if it were established that these late charges were improperly assessed, we are not prepared to leap to the conclusion that their inclusion in the judgment eliminates Beneficial's § 547(b)(5) defense to the claims for several reasons. First, if the late fees were included in a state court judgment in a proceeding over which the state court had jurisdiction and was not secured by fraud, the state court judgment must be accorded full *res judicata* effect by this court. *See, e.g., Pepper v. Litton,* 308 U.S. 295, 305–06, 60 S.Ct. 238, 244–45, 84 L.Ed. 281 (1939); and *In re Kovalchick,* 175 B.R. 863, 871–73

(Bankr.E.D.Pa.1994). Moreover, contrary to the Debtor's argument, the *res judicata* effect of a default judgment is the same as that of any other judgment. *See In re Garafano,* 99 B.R. 624, 629–30 (Bankr.E.D.Pa.1989). Collateral estoppel, also known as issue preclusion, arises only if the issue in question has been actually litigated. *Res judicata,* also known as claim preclusion, is bound by no such limitations. Therefore, we cannot now look behind the CCP judgment and determine that all or a part of it are improper. The Debtor was bound to defend in the state court action and to appeal from any decision of that court which he believed was in error. By means of the judgment, which cannot be collaterally attacked in this court, Beneficial is "entitled" to the late charges.

Second, if the only dispute of the Debtor is the amount of the judgment, he had in his power the right to ask the state court to exercise its "inherent power" to correct errors in the amount of the default judgment to conform to the facts involved in the case, particularly since the only error alleged is a small sum included in the judgment, and not a contention that the entire judgment was wrongfully entered. *See Harr v. Furman,* 346 Pa. 138, 143, 29 A.2d 527, 530 (1943); *Brummer v. Linker,* 329 Pa. 192, 195, 196 A. 834, 836 (1938); *B.C.Y., Inc. v. Bukovich,* 257 Pa.Super. 121, 125, 390 A.2d 276, 278 (1978); and *Wilson Laundry Co. v. Joos,* 200 Pa.Super. 595, 601, 189 A.2d 917, 920 (1963). However, as we already noted in our discussion of the Debtor's fraudulent conveyance claims at pages 890–891 *supra,* the Debtor has not herein leveled any direct attack at the state court proceedings under 11 U.S.C. § 544(b).

Finally, it is counterintuitive to allow the Debtor to forego the appropriate means for adjusting the amount of the judgment and instead allow the Debtor to parlay this slight error against him into a preference claim. Thus, in *In re Pusey, Maynes, Breish Co.,* 122 F.2d 606, 608–09 (3d Cir.1941), the court indicated that a small error against the debtor as to the amount of its security interest would not serve as the basis for a claim of a preference.

■ Assuming *arguendo* that *res judicata* did not bar same and that the late charges

were improperly assessed, two conclusions which we have no basis for reaching on the instant record, it appears that a proceeding or action to adjust the amount paid to Beneficial was the only proper remedy by which the Debtor could correct this error. The fact that the amount paid to a secured creditor was slightly in error to the creditor's advantage should not create a sufficient basis for creating an exception to the rule that § 547(b)(5) protects secured creditors from preference actions. The Debtor has, not surprisingly, cited no case standing for this or any similar principle.

For the several reasons noted herein, we therefore conclude rather easily that the Debtor cannot satisfy his burden of proving that Beneficial received a voidable preference against his estate in obtaining its foreclosure judgment and receiving the distribution after the execution sale in enforcement thereof. Accordingly, the Debtor cannot prevail on its claim that Beneficial received a voidable preference, or that any such preference could constitute a basis for avoiding the Sheriff's sale at issue.

### D. CONCLUSION

In light of the foregoing, we are constrained to enter the following order denying any relief to the Debtor and dismissing the Complaint in this Proceeding.